OPINION
Appellant Maurice Nash appeals his conviction, in the Stark County Court of Common Pleas, on one count of retaliation against a public servant or witness. The history of the case leading to this appeal is as follows: The incident leading to appellant's conviction took place on June 1, 1999, during the trial of appellant's brother, Frank M. Nash, Jr., on a charge of having weapons while under disability. On that date, Canton Police Officer Michael Peterson appeared at the Stark County courthouse to testify pursuant to a subpoena. He was not in uniform, but instead wore a civilian suit. After his testimony in the Frank Nash case, he stayed in the vicinity of the courtroom on the second floor in order to be available as a rebuttal witness if necessary. Appellant and his companions, Kirby Johnson and Clifton Wilson, were also present in the Stark County Courthouse on June 1, 1999. While Peterson walked back and forth in a common area outside of the courtroom, he noticed the above three men sitting on a bench behind a glass partition in the same general waiting area. According to Peterson, he heard appellant loudly state, "This trial is F-ing bull s-h-i-t," followed soon thereafter with "F Peterson. I will kill that B." Peterson quickly reported this to the assistant county prosecutor handling the Frank Nash case and that same day made a request for the filing of criminal charges at the Canton City Prosecutor's Office. The Stark County Grand Jury issued an indictment against appellant on June 11, 1999, for one count of retaliation. Trial proceeded on August 9 and 10, 1999. The jury found appellee guilty of retaliation, a felony of the third degree, and on August 25, 1999, the court sentenced appellant to a prison term of two years. Appellant timely appealed and herein raises the following three Assignments of Error:
 I. THE JURY VERDICT FINDING APPELLANT GUILTY OF ONE COUNT OF RETALIATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED; AND THE STATE OF OHIO FAILED TO PROVE BEYOND A REASONABLE DOUBT ALL ELEMENTS OF THE OFFENSE THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE CONSTITUTION OF THE UNITED STATES.
 II. THE TRIAL COURT ERRED IN PRECLUDING AS HEARSAY THE TESTIMONY OF EDWARD MITCHELL WITH RESPECT TO PRIOR COMMENTS MADE BY OFFICER PETERSON CONCERNING HIS INTENTION "TO GET" APPELLANT.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ALLOW A JURY VIEW AFTER REQUEST BY BOTH THE DEFENSE COUNSEL AND THE JURY DURING ITS DELIBERATIONS.
 I.
In his First Assignment of Error, appellant asserts that the verdict was against the manifest weight of the evidence and that the state failed to prove all of the elements of the offense. We address appellant's latter contention first. In considering an appeal concerning the sufficiency of the evidence, our standard is as follows:
 *** [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273. The statute in question, R.C. 2921.05(A), reads as follows:
 (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
According to R.C. 2921.01(B)(1), the term "public servant" includes within its definition a "public official." The latter term is defined as "any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement officers." R.C.2921.01(A). Thus, Officer Peterson met both the "public servant" and the "witness" criteria under R.C. 2921.05(A). In State v. Esway (Sept. 27, 1999), Stark App. No. 1999CA00109, unreported, at 3, we held that:
 Based upon the legislative history and the past tense use of the word "discharge" in R.C. 2921.05(A), we find that in order to sustain a conviction under said statute, there must be some proof the attack was precipitated by a specific civil or criminal case involving the victim.
According to the record of Peterson's testimony, the incident occurred as follows:
 As I am walking, at this point out here, I'm pretty much out of his sight. Maurice said at that point, "This trial is F-ing bull s-h-i-t." And then he said, you know, called me a B and said, "Look at him with that cheap-ass suit on."
 At that point I am turning around and walking back into their view. I walk back into their view. He at that point said, "F Peterson. I will kill that B."
 He stands up. When he said that we take that as a threat, and not just what he said but his movement at that point.
 He stands up and says that. The other subject at that point says, "Yeah, we should rush his ass." And the other subject says, "Yeah, let's rush him."
 At that point Maurice, again, says, "Yeah, what is he going to do about it."
 I am looking at them at that point. At that point they all stand up and they are looking at me and I am looking dead at them. And, actually, I am facing them like I am facing you right now. And at that point I said, "That wouldn't be a good idea."
 At that point the bottom line is I got scared. I had no idea what these guys were going to do. They are not afraid to confront me in public like that.
Tr. at 44-45.
Clearly, appellant's threats followed immediately on the heels of his obtrusive commentary on the judicial proceedings of the day. Therefore, viewed in the light most favorable to the prosecution, we find a sufficient nexus between Peterson's participation in the Frank Nash trial and the threats he received to support the jury's finding of the necessary elements of retaliation beyond a reasonable doubt. We next turn to appellant's contention that his conviction is against the manifest weight of the evidence. Our standard of review is stated as follows: The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175.
Officer Peterson's version of the incident has been quoted above. In contrast, Kirby Johnson, one of appellant's companions, testified that the three men sat on the bench and merely talked about Peterson's suit, at which time Peterson "went crazy." Tr. at 88. Johnson denied observing appellant make any threats towards Peterson, but indicated that the officer "said something [to appellant] about he was going to arrest him." Tr. at 90-92. Frank Nash, Sr., the father of appellant and Frank Nash, Jr., did not observe the incident in question; however, he also stated that Peterson afterwards said he was going to arrest appellant and "make sure he was going to go to jail." Tr. at 104. Finally, Manville Johnson, the grandfather of appellant, testified that he spoke to Peterson the day after the incident, at which time Peterson told him he hadn't heard the threat, but had instead "read their lips." Tr. at 109. Here, we are clearly faced with contradictions between the testimony of the state's sole witness and that of the defense witnesses, all of the latter group being either acquaintances or relatives of appellant. Among these defense witnesses, only Kirby Johnson was an eyewitness to the actual incident. In consideration of the entire record, we are unable to hold that the jury lost its way and created a manifest miscarriage of justice so as to warrant reversal under these facts and circumstances. Appellant's conviction is not against the sufficiency and/or manifest weight of the evidence. Appellant's First Assignment of Error is overruled.
 II.
In his Second Assignment of Error, appellant maintains that the trial court improperly excluded the testimony of Edward Mitchell, a resident of appellant's neighborhood, who reportedly intended to testify regarding Peterson's alleged past statements about his desire "to get" appellant. We disagree. The admission or exclusion of evidence rests within the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217
. The relevant portion of the transcript reveals the following exchange:
 Q. At some point before Maurice's brother Frank's trial, did you have some discussions with Officer Peterson regarding Maurice?
A. No, I didn't have no discussions.
Q. Were you present when he made comments about —
 A. Yeah. I was coming off the porch going towards Maurice's grandfather's house. We stay across the street from him. And he said —
MR. REESE: Objection, Your Honor, May we approach?
 THE COURT: Okay. Excuse me. You have to wait until the Court rules on the objections. Please approach.
 (Thereupon, a conference was had at the bench outside the hearing of the jury.)
 MR. REESE: It's going to be hearsay. It's not impeachment because during direct Mr. Ivey asked Officer Peterson if he ever had a conversation with this gentleman. He said no. This gentleman just said that's true. He never had a conversation. He overheard it.
 MR. IVEY: I asked him did he ever threaten him with him there to get Maurice. That's what I am asking.
THE COURT: You asked him if he had a conversation with him.
 MR. IVEY: All right. I think he said it to him, but I think he's misunderstanding what I am saying.
THE COURT: Where are you going?
 MR. IVEY: I am going to ask did Mr. Peterson say something to him or not.
 MR REESE: I object. It's already been asked and answered and it's leading.
 MR. IVEY: It's clarified. I think he meant an exchange of conversation.
 MR. REESE: The witness can't be more clear. He said I didn't talk to him. I saw him talking to Manville Johnson And that's what he said.
THE COURT: I agree. Sustained. Move on.
(End of conference at the bench.)
BY MR. IVEY:
 Q. Mr. Mitchell, I am interested not in what Officer Peterson said to anyone else but what he said to you.
What did he say to you about Maurice?
 A. He didn't say nothing to me about Maurice. Like I said, I was walking past the car and that's when I heard —
MR. REESE: Objection, Your Honor.
THE COURT: Sustained.
MR. IVEY: I have nothing further.
Tr. at 79-81.
Appellant argues that Mitchell's testimony should have been permitted as an impeachment of Peterson's prior inconsistent statements. See Evid.R. 801(D)(1). The state argues that the testimony was not valid impeachment since Mitchell himself averred that he never had any conversations with Peterson. Thus, as the above exchange reveals, because appellant's counsel limited his line of questioning to what Peterson told Mitchell, it would have been improper to allow the testimony. We agree with this assessment. There was no abuse of discretion in the trial court's decision not to allow admission of Mitchell's testimony under Evid.R. 801(D)(1). Appellant further argues that Mitchell's testimony should have been admitted as exception to hearsay under Evid.R. 803(1) and 803(3). However, under Evid.R. 103(A), to establish error regarding the issue of excluded evidence, an appellant must show that the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked. See, e.g., Campbell v. Johnson (1993), 87 Ohio App.3d 543, 551. Lacking a proffer in the record, this court is unable, under these circumstances, to engage in conjecture regarding what Mitchell's testimony might have been from the context presented. We find no error in the trial court's action in regard to the witness Edward Mitchell. Appellant's Second Assignment of Error is overruled.
 III.
In his Third Assignment of Error, appellant claims that the trial court erred in overruling his oral motion for a jury view of the crime scene pursuant to R.C. 2945.16 after the state's case in chief. We disagree. The grant or denial of a jury view of the crime scene is entrusted to the broad, sound discretion of the trial court. State v. Zuern (1987), 32 Ohio St.3d 56, 58. Accordingly, we, as a reviewing court, will not reverse a trial court's ruling as to the jury viewing the crime scene unless that court acted unreasonably, arbitrarily, or unconscionably. Our reading of the record indicates that the trial judge was averse to permitting a jury view on oral motion so "late in the game." Tr. at 66. The trial judge was not persuaded by protestations that appellant's counsel did not know of the fact of his client's position behind the glass partition until informed by Peterson's testimony. We likewise find no merit in this assertion. Furthermore, there is authority in Ohio law suggesting that motions for jury views are subject to the time parameters for pre-trial motions under Crim.R. 12(C). See State v. Smith (1993),90 Ohio App.3d 177. The trial court did not abuse its discretion in denying appellant's motion for a jury view or the jury's request for same. Appellant's Third Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, is hereby affirmed.
 __________________________ WISE, J.
FARMER, P.J., and READER, V. J., concur.